■ In the Matter of WILLIAM D., Petitioner, v KENNETH ROHL, as Justice of the Supreme Court of the State of New York, et al., Respondents.—Proceeding pursuant to CPLR article 78 to prohibit the respondent Justice of the Supreme Court, Suffolk County, from enforcing his order dated December 14, 1988, which directed the petitioner "to permit pubic and head hair samples to be taken by a certified physician's assistant and examined by the Suffolk County Criminalistics Laboratory for analysis".

Adjudged that the petition is granted, without costs or disbursements, and the respondent Justice of the Supreme Court, Suffolk County, is prohibited from enforcing his order dated December 14, 1988.

The petitioner and his wife were married in 1983 and were separated on April 26, 1988. Their five-year-old daughter visited with the petitioner from June 23, 1988 to June 26, 1988. Three days later, on June 29, 1988, the child's mother examined the child's vagina, and professed that she saw hairs therein. Purportedly, she removed the hairs and folded them in a white tissue. She placed the tissue, as well as the panties which her daughter was wearing that day, in a plastic bag with a zip lock. The child was then taken to Stony Brook University Hospital for a physical examination. The results of that physical examination revealed, inter alia, "neovasculari-

zation noted at 6 o'clock", and inflammation and redness of the vaginal area. According to the hospital records, the mother stated that the child told her that "Daddy touched my private area with his fingers and it hurt afterward". The plastic bag and its contents were sent to the Suffolk County Criminalistics Laboratory where "questioned hairs" were removed from the child's panties. No hairs however, were detected on the white tissue. Upon further examination, it was determined that the hairs in the panties were six animal hairs and two human hairs "typical of Caucasian origin".

The respondent District Attorney of Suffolk County then moved, by order to show cause, for an order directing the petitioner father to provide samples of his head and pubic hairs. After a hearing at which the child's mother and a hair sample analyst testified, the respondent Supreme Court Justice, by order dated December 14, 1988, granted the relief requested by the District Attorney of Suffolk County. Thereafter, the petitioner instituted this proceeding to prohibit the enforcement of that order.

Initially, we hold that a proceeding in the nature of prohibition is a remedy which may be availed by a suspect who seeks review of a court order directing him to furnish bodily samples to the People (see, Matter of Abe A., 56 NY2d 288, 296, n 3; Matter of Barber v Rubin, 72 AD2d 347; Matter of David M. v Dwyer, 107 AD2d 884; Matter of Brown v Monserrate, 101 AD2d 674).

With respect to the merits of the instant proceeding, it is now well settled that a suspect may be compelled, pursuant to court order, to supply the People with nontestimonial evidence, "provided that the People establish (1) probable cause to believe the suspect has committed the crime, (2) a 'clear indication' that relevent material evidence will be found, and (3) the method used to secure it is safe and reliable" (Matter of Abe A., 56 NY2d 288, 291, supra).

Viewed within this perspective, the motion of the District Attorney of Suffolk County should have been denied.

Initially, we note that there is no evidence in the record to indicate that the petitioner's daughter was even wearing the particular panties during her visit with her father. Indeed, the hospital record indicates that "clothing at time of speculated incident not avail". Moreover, the People's application was totally undermined by the testimony of their own witness, a hair sample analyst of the Suffolk County Crime Lab Unit. The analyst testified that the two human hairs found in the

panties were of "no comparison value because they were body hairs", and were neither head nor pubic hairs. According to the analyst, "body hair on the arms, legs, underarms, chest hair do not have enough internal characteristics within the population to fortify an examination so we can only work with head hair and pubic hair". Finally, the analyst testified that the two human hairs in the panties could have been picked up from a laundry basket, the floor or elsewhere, and could be hairs from anyone in the household, because humans shed approximately 100 hairs a day. Under these circumstances, the People's application constitutes nothing more than a fishing expedition which cannot be countenanced.

Accordingly, this CPLR article 78 proceeding is granted and the respondent Justice is prohibited from enforcing his order dated December 14, 1988. Mangano, J. P., Thompson, Bracken and Brown, JJ., concur.